**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 1:10-CR-249 AWI** |
| **Plaintiff** | |
| v. | **ORDER ON MOTION FOR COMPASSIONATE RELEASE** |
| **ERIC RAY HERNANDEZ,** | |
| **Defendant** | (Doc. No. 393) |

On May 15, 2020, Defendant Eric Ray Hernandez filed a motion for compassionate release under 18 U.S.C. § 3582. On May 18, 2020, the Court set a briefing schedule. All briefing has now been received. For the reasons that follow, Defendant's motion will be denied.


**PROCEDURAL HISTORY**

On June 10, 2013, Defendant pled guilty pursuant to a plea agreement to one count of 18 U.S.C. § 1349, conspiracy to commit mail fraud, wire fraud, and bank fraud. See Doc. Nos. 171 (plea bargain), 175. Over a roughly 18 month period, Defendant along with four other co-defendants (including his wife) participated in the fraudulent purchase or refinance of approximately 29 residential properties. See Doc. Nos. 171, 189 (presentence report). Twenty-eight of the properties went into foreclosure, which resulted in over $6 million in fraud losses to lenders. See Doc. No. 189. Defendant perpetrated this scheme as a real estate employee at a mortgage brokerage firm. See id. Although the base offense level for the conspiracy charge was 7, the adjusted offense level was 31 based on upward adjustments for leadership role (plus 4), sophisticated means (plus 2), and amount of loss (plus 18). See id. The presentence report recommended a sentence of imprisonment of 130 months. See id.

On September 16, 2013, Defendant was sentenced to 130 months in prison, 36 months of supervised release, a $100 assessment, and joint and several restitution of $6,087,541.00.  <u>See</u> Doc. No. 210.  Judgment and commitment were entered on September 24, 2013.  <u>See</u> Doc. No. 212.  At the time of his sentencing, Defendant was 37 years old.  Through extensions, Defendant was ordered to surrender for imprisonment on January 29, 2014.  <u>See</u> Doc. No. 228.  Defendant is currently house at USP Lompoc.

Defendant has served approximately 76 months of his sentence.  Defendant has an anticipated release date of April 14, 2023 but, after completion of an eight-month 500 RDAP program (which has been delayed indefinitely due to Covid 19), he could be released to a half-way house.

On April 16, 2020, Defendant submitted a request for compassionate release to the Warden of USP Lompoc in response to two Memorandums (dated March 26, 2020 and April 3, 2020) issued by United States Attorney General William Barr to the Director of Prisons.  In the memorandum, the Attorney General requested that the BOP director allow home confinement for prisoners in high risk groups for Covid 19 and/or prisoners at BOP facilities were Covid 19 is spreading.

On April 24, 2020, the Warden of Lompoc received Defendant's request.  <u>See</u> Doc. No. 397-1 at Ex. 2.

On May 4, 2020, the Warden denied Defendant's request.

On May 15, 2020, Defendant filed this motion.

On May 21, 2020, Plaintiff filed an opposition.

On May 26, 2020, Defendant filed a reply.

### **DEFENDANT'S MOTION**

*Defendant's Argument*

Defendant argues *inter alia* that his particular vulnerability to Covid 19 is an extraordinary and compelling reason for immediate compassionate release or home confinement.  Defendant argues that, as reflected in his medical records, he has severe asthma, is male, and Latino.  Latinos

1   and males are more susceptible to contracting Covid 19, and those with asthma are more

2   susceptible to suffering serious complications/illness from Covid 19.  As of May 14, 2020, FCI

3   Lompoc has had 885 inmates and 13 staffers infected with Covid 19.  Lompoc has the largest

4   Covid 19 outbreak of any federal penitentiary.  Although the Lompoc facility has taken Covid 19

5   related measures, the measures to protect the health of prisoners has been stagnant.  Defendant is

6   housed in an open unit of 200 inmates with no barriers or adequate distancing to assure that any

7   disease or exposure is limited.  Additionally, Defendant argues that, even though 30 days has not

8   yet elapsed from the date he sent his request for release to the Warden, compliance with §

9   3582(c)(1)'s exhaustion requirements are not jurisdictional.  If no equitable exceptions are

10  available, Defendant may never be able to obtain timely review before the Covid 19 virus takes its

11  toll on him.  If the Warden denies the request, Defendant has 20 days to appeal to the Regional

12  Director, and if that appeal is unsuccessful, then has 30 days to appeal a denial to the Bureau of

13  Prisons General Counsel.  Requiring this exhaustion will endanger Defendant's life.

14          In reply, Defendant states that he agrees that the earliest possible date he could have filed

15  his motion was May 24, 2020.  However, since it is now beyond May 24, the issues are ripe for

16  consideration.  Because of the urgent risk of fatal infection, the Court can waive the 30-day wait

17  requirement.  Defendant also emphasizes the unprecedented emergency posed by Covid 19.

18  Defendant states that he is housed at "the Camp" at USP Lompoc and, as of May 23, 2020, USP

19  Lompoc had 54 inmates and 8 staff members with confirmed Covid 19 diagnoses.  Defendant

20  emphasizes that the conditions of confinement increase the dangers of inmates contracting Covid

21  19.  The conditions at Lompoc are now the subject of a civil suit in the Central District of

22  California.  Further, as of May 26, 2020, Defendant has not been tested for Covid 19, although he

23  was quarantined on March 31, 2020, after possible exposure to Covid 19.  Defendant states that

24  his medical records indicate that he was diagnosed with asthma in prison on April 8, 2014.  The

25  records do not reflect whether the condition is "moderate to severe."  However, the CDC

26  recognizes that those with "moderate to severe" asthma may be at a higher risk of getting very sick

27  from Covid 19 in that the virus may affect an asthmatic's respiratory tract, cause asthma attacks,

28  or possibly lead to pneumonia and acute respiratory disease.  "Hence, the Government's concern

about the level of Mr. Hernandez's asthma is insignificant.  Suffering from the condition itself and the virus's effect on asthma is the major concern herein."  Defendant emphasizes that his asthma, combined with his incarceration at USP Lompoc, is a serious medical condition which significantly diminishes his ability to provide self-care.

### Government's Opposition

The Government argues *inter alia* that the administrative remedies of § 3582(c)(1) are mandatory and jurisdictional.  There are no exceptions.  Defendant should have either appealed the Warden's denial or waited 30 days after the Warden received the request for compassionate release before filing this motion.  The Court should either dismiss this motion without prejudice or stay the motion until after May 24, 2020.  The Government also notes that Defendant is housed in USP Lompoc, not FCI Lompoc.  There are currently 57 inmates and 8 staff members who have active Covid 19 diagnoses at USP Lompoc, while 107 inmates have recovered from Covid 19, and 2 inmates have died.  Inmates who are diagnosed with Covid 19 are separated from the other inmates.  The Government also argues  that Defendant has not demonstrated that extraordinary and compelling reasons allow for his release.  The general threat of Covid 19 poses a risk to every non-immune person in the country.  Moderate to severe asthma is recognized by the CDC as a high risk factor for Covid 19 complications.  However, while Defendant's asthma may potentially combine with Covid 19 to show extraordinary circumstances, Defendant has neither demonstrated that his asthma is moderate to severe or that he otherwise merits release (even if his asthma is moderate to severe).

### Legal Standard

Criminal defendants are empowered to request compassionate release for "extraordinary and compelling reasons."  United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020).  Specifically, in relevant part, 18 U.S.C. § 3582 provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
>     (1) in any case—
>         (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

4

such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction;

18 U.S.C. § 3582(c)(1)(A)(i).  Before a defendant makes a request for compassionate release due to "extraordinary and compelling circumstances," "defendants must at least ask the [BOP] to do so on their behalf and give BOP thirty days to respond."  Raia, 954 F.3d at 595.

*Discussion*

After review, the Court will deny the motion for two reasons.  First, the Ninth Circuit has held that "while judicially created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and thus, preclude any exercise of discretion by the court."  Gallo Cattle Co. v. U.S. Dept. of Agric., 159 F.3d 1194, 1197 (9th Cir. 1998); see Shaw v. Bank of Am. Corp., 946 F.3d 533, 541 (9th Cir. 2019).  The Third Circuit has found that the administrative exhaustion requirement of § 3582(c)(1)(A) is jurisdictional, even in the context of Covid 19.  Raia, 954 F.3d at 597 (noting, in the context of an individual who did not wait 30 days from making a request for compassionate release before moving for release in the federal court system, "Although the District Court's indicative ruling did not mention the exhaustion requirement, it presents a glaring roadblock foreclosing compassionate release at this point.").  Numerous district courts, including opinions from the Eastern District of California, have held that § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional and may not be waived.  E.g. United States v. Logan, 2020 U.S. Dist. LEXIS 88672, *3-*4 (W.D. N.C. May 20, 2020) (and numerous cases cited therein); United States v. Cruceru, 2020 U.S. Dist. LEXIS 84502, *3 (E.D. Cal. May 12, 2020) (Nunley, J.); United States v. Valladares, 2020 U.S. Dist. LEXIS 75182, *4 (S.D. Cal. Apr. 29, 2020) (and cases cited therein); United States v. Meron, 2020 U.S. Dist. LEXIS 66533, *5 (E.D. Cal. Apr. 15, 2020) (Mueller, C.J.).  Here, because Defendant admits that the earliest that he could have filed his motion was May 24, 2020, but nevertheless filed it on May 15, 2020, Defendant failed to exhaust his jurisdictional remedies at the time of filing this motion.  That is a jurisdictional failure.

Second, it is unclear whether the Court may retroactively "stay" this case and find that exhaustion has occurred since it is now obviously past May 24, 2020.  The Ninth Circuit has recognized that "subject matter jurisdiction must exist as of the time the action is commenced, especially in the context of administrative exhaustion." Shaw, 946 F.3d at 541.  Further, subject matter cannot be created through agreement by the parties. See Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 n.1 (9th Cir. 1992).  Nevertheless, assuming that the Court now has subject matter jurisdiction, the Court would still find that dismissal is appropriate because Defendant has not demonstrated that he faces "extraordinary and compelling circumstances."

Defendant's basis for demonstrating "extraordinary and compelling circumstances" hinges on the presence of active Covid 19 cases at USP Lompoc combined with his diagnosed condition of asthma.  There is no dispute that the CDC identifies asthma as a condition that increases the risk of serious complications from Covid 19.  However, it is asthma that is classified at least as "moderate to severe" that puts people at "high risk for severe illness from Covid-19." United States v. Attia, 2020 U.S. Dist. LEXIS 89687, *10-*11 (D. Md. May 21, 2020) (citing www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-at-higher-risk.html); United States v. Evans, 2020 U.S. Dist. LEXIS 87775, *6-*7 (D. Del. May 19, 2020); United States v. Howell, 2020 U.S. Dist. LEXIS 83306, *6-*7 (D. Conn. May 12, 2020); United States v. Echols, 2020 U.S. Dist. LEXIS 81458, *6-*7 (N.D. Miss. May 8, 2020); Goncalves v. Moniz, 2020 U.S. Dist. LEXIS 79714, *8-*9 (D. Mass. May 6, 2020); United States v. Riggins, 2020 U.S. Dist. LEXIS 73375, *13-*16 (D. D.C. Apr. 27, 2020); United States v. Short, 2020 U.S. Dist. LEXIS 72509, *3-*4 (D. Conn. Apr. 24, 2020); United States v. Willis, 2020 U.S. Dist. LEXIS 66095, *16-*17 & n.2 (D. Kan. Apr. 15, 2020).  Therefore, contrary to Defendant's argument, the severity of Defendant's asthma is not "insignificant," rather, the severity of Defendant's asthma is key to Defendant's motion.[1] See id.

---

[1] However, the Court notes that other district courts have recognized that recent data suggests that asthma may not increase the risk of developing Covid 19 and is not among the top ten risk factors that increases the risk of a dire outcome from Covid 19. See United States v. Roberts, 2020 U.S. Dist. LEXIS 90372, *5-*6 (S.D. N.Y. May 22, 2020); United States v. Brown, 2020 U.S. Dist. LEXIS 91001, *3-*5 (E.D. Mich. May 21, 2020); Short, 2020 U.S. Dist. LEXIS 72509 at *4 n.2.  For purposes of this motion, the Court accepts the CDC's guidance/characterization of asthma that is "moderate to severe."

1    The Court has reviewed the representations in Defendant's motion and reply, as well as the

2    medical records that Defendant has attached.  Defendant's motion, citing only his medical records,

3    states that Defendant has been diagnosed with and suffers from "severe asthma."  See Doc. No.

4    393: at 2:8-10.  However, Defendant's reply admits that Defendant was diagnosed with asthma in

5    prison and none of the doctors or medical records actually use the term "severe" or "moderate," let

6    alone "moderate to severe."  See Doc. No. 400 at 8:24-9:1.[2]  Therefore, Defendant's concession

7    means that the medical records do not "expressly" support his assertion of "severe asthma."

8    Further, to the extent that the Court view's Defendant's motion as a self-diagnosis, there is no

9    basis for the Court to accept such a diagnosis.  There is no indication that Defendant has any

10   relevant expertise that would permit him to opine as to the severity of his asthma.[3]

11   In terms of medical history, Defendant's September 2013 PSR states that Defendant "is

12   healthy and has no history of health problems."  Doc. No. 189 at ¶ 44.  However, Defendant's

13   unverified motion states that, "since childhood, [Defendant] has always had issues with asthma

14   which caused him to suffer from shortness of breath, chest tightness, and coughing."  Doc. No.

15   393 at 5:1-2.  There is no description of how often such symptoms occurred or whether the

16   symptoms limited any physical activity.  Defendant's motion continues that, despite these

17   childhood symptoms, it was not until he was imprisoned on this case that he was diagnosed with

18   asthma and prescribed an inhaler.  See id. at 5:2-4.  Defendant was 37 years old when he

19   surrendered for imprisonment.  The fact that no diagnosis of asthma was made until Defendant's

20   incarceration does not suggest a "moderate to severe" condition.

21

22   [2] Given the concession in the reply, the Court is concerned that the initial motion would classify Defendant as having
     a diagnosis of "severe asthma."  It is unclear what reasonable basis actually exists for Defendant to classify his asthma
23   as severe.

24   [3] According to the University of Michigan, The National Asthma Education and Prevention Program classifies asthma
     as either "intermittent," "mild persistent," "moderate persistent," or "severe persistent."  See www.uofmhealth.org/
25   health-library/hw161158.  The classification guidelines indicate that a patient in any one of the five classifications can
     have severe asthma attacks and classifications can change over time.  See id.  The classifications appear to depend on
26   the daytime and nighttime frequency of symptoms, lung function tests, the frequency of the use of asthma medication,
     and the degree of interference with daily activities.  See id.  The Court is not holding that the criteria of the National
27   Asthma Education and Prevention Program is the only standard or even the generally accepted standard in the medical
     community for classifying asthma.  The Court here cites the criteria from this organization (and the University of
28   Michigan) to illustrate that the classification of asthma is not something that a layperson can reasonable do simply by
     applying a subjective or non-medical understanding of the terms "moderate" or "severe."

A January 30, 2014 health screening indicates that Defendant denied a history of respiratory issues. See Doc. No. 393-4 at ECF p.7.

A "Health & Physical" record dated April 8, 2014 indicates that Defendant reported a history of asthma with a juvenile onset (between ages 9 and 18). See id. at ECF p.13. Under "constitutional symptoms," Defendant denied that he easily tired or had fatigue, fever, night sweats, or unexplained weight loss. See id. at ECF p.18. "Respiratory history" was listed as a "potential time for follow-up." Id. at ECF p.24. Further, a diagnosis of asthma was made by Dr. Gross. See id. Dr. Gross proscribed an albuterol inhaler to be taken up to four times a day, two puffs per dose, as needed over 180 days for wheezing or shortness of breath. See id. at ECF pp. 25, 38. Dr. Gross referred Defendant for a weight loss program. See id. A "Medical Duty Status" sheet dated April 8, 2014 has no limitations or restrictions identified for physical activity (including sports) and no work restrictions were placed on Defendant. See id. at p.37.

An "Inmate Intra-system Transfer" dated October 14, 2014 indicated that Defendant had been symptom free for 30 days. See id. at ECF p.27.

As part of a "Dental Health History Screen" on February 19, 2015, Defendant's juvenile asthma onset is listed. See Doc. No. 393-5 at ECF p.11. Of note, under the comments for respiratory health, a notation of prescription inhaler three times per week is identified. See id.

A "Health Services Clinical Encounter" sheet dated May 9, 2016, indicates that Defendant saw a Registered Nurse because he was sick for two weeks with fever, cough, chest congestion, and colored mucus. See Doc. No. 393-6 at ECF p.3. Defendant was assessed with cold symptoms and prescribed a seven day course of the antibiotic Levofloxacin. See id. at ECF p.6. No reference in this encounter is made to Defendant having asthma, using an inhaler, requesting an inhaler, or being prescribed an inhaler. See Doc. No. 393-6.

A "Health Services Encounter" sheet dated January 4, 2018, indicates that Defendant saw a Nurse Practitioner for pulmonary/respiratory problems. See ECF No. 393-8 at ECF p.3. The "subjective' portion of the sheet indicates that the 41 year old Defendant requested an albuterol inhaler, that Defendant reported dry coughs and wheezes at night for the last six months, that Defendant has a history of asthma, that Defendant had not been using an inhaler "for a long time,"

1    and he denied shortness of breath or chest pain at that moment.  Id.  Pulmonary observation

2    indicated that Defendant was within normal limits and was not in distress, and auscultation was

3    clear without crackles or wheezing.  Id. at ECF No. 393-8 at pp.3-4.  An "assessment" of "asthma,

4    unspecified" was made.  Id. at p.4.  An albuterol inhaler was prescribed.  See id.  Defendant was

5    ordered to take the albuterol up to four times a day, two puffs at a time, for 30 days as needed.

6    See id. at ECF pp.4, 17.  A chest x-ray was also ordered because Defendant "reports intermittent

7    non-productive cough and wheezes at night x 6 months.  Inmate has a history of Asthma."  Id. at

8    ECF p.4.  Defendant was told to report to the health services unit if he needed to use the inhaler

9    more often than prescribed and was instructed to avoid cold and extreme weather change.  See id.

10   The chest x-ray resulted in a finding of "no acute cardiopulmonary disease.  Lungs are clear.

11   Heart size is normal."  Id. at ECF p.29.

12          A "Health Services Encounter" sheet dated February 28, 2018, indicates Defendant saw

13   Dr. Souferzadeh for a follow up and a post-operative evaluation.  See id. at ECF No. 1.  Defendant

14   indicated he was doing well and denied having shortness of breath, chest pain, or fever, and stated

15   that he did not need any medication.  See id.  As part of the "assessment," it was noted that

16   "asthma, unspecified" (apparently referring to the asthma diagnosis of January 4, 2018) had

17   resolved.  See id. at ECF p.2.  No further medication, including an albuterol inhaler, was issued.

18   See id. at ECF pp.1-2.

19          A "Health Services Encounter" sheet dated January 10, 2020, indicates that Defendant saw

20   a nurse regarding pulmonary/respiratory problems.  See Doc. No. 393-9 at ECF p.1.  Under the

21   "subjective" section, it is noted that the 42 year old Defendant was complaining of cough, nasal

22   congestion, and blood in sputum.  See id.  Under "assessment," a diagnosis of "acute pharyngitis,[4]

23   unspecified" is listed.  See id.  X-rays were ordered because Defendant reported coughing up

24   blood.  See id.  Defendant was prescribed a ten day course of amoxicillin.  See id. at ECF p.6.  No

25   mention of asthma or an albuterol inhaler was made as part of the January 10, 2020 encounter.

26   See id. at ECF pp.1-15.  A "medical status duty" sheet dated January 10, 2020, indicates that

27   Defendant was to be confined to living quarters except for meals, pill line, and treatments until

28
_____
[4] "Pharyngitis" is the medical term for a soar throat.  See https://www.medicalnewstoday.com/articles/324144.

January 13, 2019.  No restrictions were placed on "physical limitations/restrictions," but a "medical idle" restriction was placed on "work restriction/limitation" until January 13, 2019.  See id. at ECF p.20.  The results of the x-ray were "no acute cardiopulmonary disease."  Id. at ECF p.24.

A "Health Services Clinical Encounter" dated January 17, 2020, shows that Plaintiff saw a Nurse Practitioner and complained of cold or flu symptoms.  See Doc. No. 393-10 at ECF p.7.  Under the "subjective" section, Defendant complained of a headache, cough, sore throat, difficulty breathing and chills  ten times per day.  See id.  Over the counter cough medicine was not working.  See id.  Defendant acknowledged his history of asthma, but denied fever, chest pain, or chest tightness.  See id.  Pulmonary observation did not reveal any respiratory distress and auscultation was clear.  See id. at ECF p.8.  Under the "assessment" section, a diagnosis of "acute sinusitis" is made.  Id.  Defendant was  prescribed a ten day course of amoxicillin for the sinusitis and an albuterol inhaler for asthma.  See id.  The albuterol was to be taken up to four times per day, two puffs at a time, over a period of 90 days.  See id.  However, the albuterol inhaler was not to be used daily.  See ECF p.20.  No restrictions or limitations on Defendant's activities are identified with respect to the January 17 clinical encounter.  See ECF pp.7-20.

On March 31, 2020, Defendant was quarantined four fourteen days due to a possible exposure to a Covid 19 positive inmate.  See Doc. No. 393-4 at ECF p.33.

Finally, a "Health Services Clinical Encounter" sheet dated April 28, 2020, indicates that Defendant saw Dr. Souferzadeh for pulmonary/respiratory problems.  See id. at ECF p.1.  Under the "subjective" section, the 44 year old Defendant reported that he has asthma and would like to get his asthma medication, but denied shortness of breath, chest pain, or fever.  See id.  Pulmonary observation revealed normal limits and clear auscultation.  See id.  An "assessment" of "Asthma" was made.  See id.  The prescription for an albuterol inhaler was renewed.  See id. at ECF p.2.  The "prescribed order" reads:  "Don't use daily.  Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days.  If need more, make sick call)."  Id.

From the above, the records do not appear to indicate that Defendant is under any restrictions or limitations because of his asthma.  From the beginning of his incarceration in

January 2014 to the present, Defendant has sporadically been prescribed albuterol and sporadically had asthma related symptoms/attacks/problems.  In fact, there are no records identified by Defendant that reveals any asthma related problems or Health Service Clinical Encounter sheets for the entirety of 2019.  There is no indication that Defendant suffers daily asthmatic attacks.  There is no indication that Defendant suffers nightly asthmatic attacks of\on any kind of regular basis.  There are no lung function tests of any kind.  While Plaintiff has been prescribed an inhaler from January 17, 2020 to the present, that inhaler was and is only to be taken "as needed" and specifically not to be taken on a daily basis.[5]  In the absence of other evidence, particularly expert evidence, the Court cannot hold that this history reflects "moderate to sever asthma."  Cf. The National Asthma Education and Prevention Program, Asthma Classification Standards as found at www.uofmhealth.org/health-library/hw161158.[6]  Rather, by themselves, the records appear to reflect that Defendant's asthma is something less than "moderate to severe," which places him outside of the particularly "at risk" asthma sufferers identified by the CDC.  Without a "moderate to severe" classification, Defendant's remaining risk categories (male and Latino) are insufficient to establish "extraordinary and compelling circumstances" under § 3852(c)(1)(A)(i).

In sum, because of the jurisdictional problem caused from Defendant's failure to exhaust statutorily required administrative remedies, and because Defendant has not demonstrated that he is particularly susceptible to developing serious Covid 19 complications/illness by virtue of having asthma, the Court will deny Defendant's motion for compassionate release without prejudice.

//

//

//

//

[5] The Court notes that the April 2020 request for an albuterol inhaler was made at a time that his request for compassionate release was pending with the Warden.

[6] Again, the Court is not holding that the standards of this organization represents the only standards or the generally accepted standards.  However, they do provide a medical frame of reference and appear to confirm the Court's view (unaided by expert evidence) of the records, i.e. the records do not reflect asthma that is "moderate to severe."

1

## **ORDER**

2        Accordingly, IT IS HEREBY ORDERED that Defendant's motion for compassionate

3  release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 393) is DENIED without prejudice.

4

5  IT IS SO ORDERED.

6  Dated:   May 27, 2020

7                    SENIOR  DISTRICT  JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28